# CHARLESTON.

## GAS COMPANY *v.* WHEELING.

### March 1, 1875.

1875.
January Term.

1. In interpreting a submission to arbitration, regard is principally to be had to the intention of the parties, and fair and liberal construction is to be adopted, without too great verbal accuracy.

2. The court will always seek to put as liberal, large and comprehensive a construction upon the submission as the apparent intent of the parties to it will admit.

3. The authorization of a majority to make a valid decision need not always be made in distinct terms in the submission.

4. By the common law, generally, where a submission is made by private parties to a given number of persons, without authority given or to be inferred from the manner or circumstances of the submission that a smaller number may decide an award or decision, it will be void, unless made by all; though a different rule seems to prevail in matters of public concern.

5. The seventeenth section of an act of the general assembly of Virginia, passed the 18th day of March, 1850, and entitled "An act to incorporate the Wheeling Gas Company," provides "that said Company shall have the sole and exclusive privilege of using the the streets, alleys and public grounds of said city (meaning the city of Wheeling) for the purpose of lighting said city with gas for the full term and period of thirty years from the time said Company shall commence the distribution and supply of gas, of which time notice shall be given by said Company to be entered amongst the records of said city, the assent of the Council of said city being first had and obtained as hereinafter provided: *Provided, always,* That upon the expiration of the twenty years from the commencement of said exclusive privilege hereby granted, and within six months thereafter, the said city of Wheeling shall have the right, at the discretion of the Council thereof, and of which notice shall be given in writing to the said Company, to purchase the said lots or grounds, works, apparatus, fixtures and property of said Com-

pany, at the price and upon the terms to be agreed between the Council of said city and the directors of said Company, or to be fixed, ascertained and determined in the following manner: By the award, in writing, of three persons to be chosen, the first by the directors of said Company, the second by the Council of said City, and the third by the two thus chosen. The said arbitrators, in making up their award, and ascertaining the said value, shall have regard alone to the then actual value, in money, of the lots or grounds, buildings, apparatus, works and fixtures of said Company, and shall not consider the value of the franchises of the said charter, or the dividends or profits accruing to the stockholders. Upon complying with the terms of the award thus made, the said Company shall, by proper deeds or other instruments, in writing convey and assure to said city of Wheeling the said lots or grounds, buildings, apparatus, works, fixtures and property, together with this charter, to be thereafter held, used and enjoyed by the said City for the benefit of the inhabitants thereof. Upon said purchase being made, as aforesaid, this charter, together with all the franchises, rights and privileges granted, or intended to be granted, under it, shall be vested in the said City of Wheeling for the common benefit of the inhabitants thereof. And if upon the expiration of said term of twenty years, the said City of Wheeling shall not make the said purchase in the mode and upon the terms prescribed by this section, the said city shall have the right to make the said purchase upon the expiration of any and every five years, upon the same terms and in the same mode, at least six months notice of such intention being given in writing to said Company, by said city, and all contracts or other acts of of said Company which shall be made, entered into or attempted for the purpose of lessening, impairing or reducing the value of said lot of grounds, apparatus, pipes or fixtures, rights, franchises and privileges made in anticipation of the said purchase, shall be utterly null and void." HELD:

That it is manifest and clearly inferrible from the reading of the whole act by which the plaintiff was incorporated, of which said seventeenth section is a part, that it was the intent and purpose of the Legislature, by the provisions of said act and its manifest objects,

*First.* That the Council of the city of Wheeling should have, and was given, by the said seventeenth section, in their discretion, the absolute right to purchase the gas works and property and become possessed thereof, together with all the franchises, rights and privileges granted under it, after the expiration of the twenty years aforesaid, and that the purchase should be made at the price and upon the terms to be agreed upon between the Council of the city and the directors of the plaintiff or by an award in writing, fixing the price and terms of the purchase to be made by arbitrators.

41

*Second.* That in the event the Council of the city elected to make the purchase and the said Council and the directors of the plaintiff should not agree upon the price and the terms of the purchase the price and terms *should* be fixed, ascertained and determined, *at all events,* by an award of the arbitrators.

*Third.* That the remedy given by arbitration should be complete and efficacious, and reasonably expeditious.

*Fourth.* That it should not be absolutely essential or necessary to the validity of the award that more than a majority of the arbitrators should agree to and sign the same, they all acting jointly.

*Fifth.* That the price and terms of the purchase should be fixed, ascertained, and determined by the arbitration, and the purchase and possession of the gas works property, &c., by the Council of the city should be completed and had by the city upon its complying with the terms of the award so made as aforesaid, or in good faith offering to do so by a legal tender of the price, in money, specified, or the equivalent of a legal tender, at, or within, the time prescribed by the award.

6. It is a rule of construction of a statute that the whole statute may be examined with the view of arriving at the true intention of each part. The spirit, as well as the letter, of a statute must be respected and when the whole context of the law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid that intent.

7. An award made and signed by two only of the three arbitrators chosen in accordance with the provisions of said seventeenth section, fixing, ascertaining and determining the price of said gas works property, &c., is within the provisions of the submission provided by said section, and is valid—all three of the arbitrators having acted together, though one of the three arbitrators dissented from said award, and endorsed his dissent thereon, with his signature.

8 The said award being made and delivered by the arbitrators on the 29th day of May, 1871, to the parties, the tender of the price money fixed in the award by the defendant to the president, secretary and treasurer of the plaintiff on the first day of June, 1871, at the office of the plaintiff, at a seasonable hour of that day, was, with the circumstances stated in the opinion of the Court delivered in this cause, equivalent to a legal tender of said price money to the plaintiff.

9. That if the defendant by its authorized agents, on the 1st day of June, 1871, at the office of the plaintiff, tendered to the president, secretary and treasurer of the plaintiff the sum of money specified in the said award of the 29th day of May, 1871, as and for the ascertained price or value of the premises in controversy and

the other property in the award referred to, and also a draft of a deed for said property, to be executed by the plaintiff to the defendant and afterwards, and before the 30th of June, 1871, the board of directors, or the stockholders, of the plaintiff in meeting assembled, with knowledge of such tender, formally refused to accept or comply with the provisions of said award, and gave notice of such decision to the defendant, the action of the defendant, in the premises, was a sufficient compliance, on its part, with the said award, to entitle it to the benefit of the award and purchase of the property, contemplated by the said seventeenth section.

1875.
January Term.

Gas Company
v.
Wheeling.

10. That after the making and delivery of said award, fixing the price and terms of the purchase, and the tender of the purchase money as aforesaid, the defendant became and occupied the relation of the vendee and purchaser of the plaintiff, of the property in the award mentioned, and having acquired peacable possession of the property, under claim of being such vendee, after such tender, in this action, being ejectment, brought by the plaintiff against the defendant to recover possession of so much of said property as is in the declaration mentioned the defendant is such vendee or purchaser of the said property, as is contemplated by the twentieth section of the ninetieth chapter of the Code of West Virginia, and it is entitled to the benefit of said section as such vendee or purchaser by way of defence to and in bar of plaintiff's right to recover in said action under the circumstances and facts stated in said written opinion.

11. The court may refuse to give an instruction if it is so obscurely expressed as to leave in doubt the meaning intended.

12. An instruction which is susceptible of two constructions, one of which is erroneous and may mislead the jury, should not be given

13. If an instruction asked does not correctly expound the law the court, as a general rule, may refuse to give it, and is not bound to modify it, or give any other instruction, in its place.

*Supersedeas* to a judgment of the circuit court of Ohio county. The case is fully stated in the opinion of the Court.

The Hon. Thayer Melvin, judge of the circuit court of Ohio county, presided at the trial below.

*Charles James Faulkner, Daniel Lamb* and *Joseph H. Pendleton,* for the appellant.

*C. W. B. Allison* and *George W. Jeffers,* for the appellee.

HAYMOND, PRESIDENT:

The plaintiff brought an action of ejectment against the defendant in December, 1872, to recover from the defendant several lots of ground situate in the city of Wheeling, then in the possession of the defendant, and claimed by the plaintiff. The action was brought in the circuit court of the county of Ohio. The plea filed by the defendant was that " it is not guilty of unlawfully withholding the premises claimed by the plaintiff in its declaration ;" and on this plea issue was joined. With the plea the defendant filed a written notice to the plaintiff that, on the trial of the cause, it would rely upon and give in evidence the award, &c., hereinafter mentioned. The plea and notice were filed in open court on the 23d day of May, 1873. Afterwards, on the 22d day of November, 1873, the defendant filed a general demurrer to the declaration, which contains but one count, and the plaintiff joined in the demurrer; and the court overruled the demurrer. On the 24th day of November, 1873, the trial of the issue joined between the parties was commenced before a jury, and, on the 28th day of November, 1873, the jury, by their verdict, found the issue for the defendant. Upon the verdict the court rendered judgment in favor of defendant against plaintiff for the costs of suit in the usual form; but, during the same term, the plaintiff moved the court to set aside the verdict and judgment, and afterwards, on the 24th day of February, 1874, the court overruled the motion. During the trial of the cause the plaintiff took twelve separate bills of exception to opinions and rulings of the court.

Bill of exceptions No. 1 recites that, after the jury were sworn, the plaintiff, to maintain the issue on its part, gave in evidence to the jury the act of the General Assembly of Virginia, passed March 18, 1850, entitled "An act to incorporate the Wheeling Gas Company." This act is set forth in full in the exception, but I will

only state such parts thereof as bear upon the questions before us for determination.

The *first* section of the act provides that the persons who shall, as " hereafter " mentioned, become subscribers to the capital stock " hereby" created, and such other persons as shall " hereafter " become stockholders in the said corporation, are " hereby " created a body politic and corporate by the name and style of " The Wheeling Gas Company," with power by that name of contracting and being contracted with, and to sue and be sued, and to acquire, hold, occupy and enjoy all such real and personal estate as may be necessary and proper for the construction, extension and usefulness of the works of the Company, &c.

The *second* section provides that the capital stock of the Company shall not be less than $50,000, with power to increase the same as thereinafter provided, without special limit of such increase.

The *third* section of the act appoints commissioners to raise subscriptions to the stock of the Company, and provides for the election of directors annually.

The *fifth* section authorizes the city of Wheeling to subscribe to the stock of the Company to an amount not exceeding $15,000.

The *sixth* section provides that the stock and all the property of the Company shall be deemed personal estate, and as such shall pass to the executors, administrators or assigns of the stockholders.

The *eighth* section provides that the corporation hereby created shall have full power and authority to manufacture and to sell gas, to be made from any or from all of the substances, or a combination thereof, from which inflammable gas is usually obtained, and to be used for the purpose of lighting the city of Wheeling, or the streets thereof, and any buildings, manufactories, public places or houses therein contained, and to erect necessary works and apparatus for conducting the gas along the streets and alleys of the city.

The *ninth* section provides that the directors or a majority of them may choose from their own body a president, and in his absence a vice-president *pro tempore* and that the president and directors, subject to such regulations as the stockholders in general meeting may ordain and establish shall have power to call general meetings of the stockholders; to supply vacancies in their own body; to appoint such officers, agents and clerks as the stockholders, in general meeting, may authorize; to take bonds with sufficient security for the good conduct, fidelity and attention of such officers, agents and clerks, and to do all other acts and things touching the affairs of the Company not otherwise specially provided for.

The *tenth* section authorizes the directors for the general purposes of the Company, &c., to borrow money and seal and deliver therefor the bonds or evidences of debt of the Company in conformity with the terms of the loan.

The *eleventh* section provides that the directors shall have power to make such by-laws and rules for their own government and for regulating the concerns of the Company, as they shall think requisite and proper respecting the management and disposition of the stock, property and estate of the Company, the duties of the artificers, officers and agents to be employed and all other matters pertaining to the concerns of the Company.

The *fourteenth* section provides that the Company shall have the exclusive privilege of using the streets, alleys, and public grounds of the city of Wheeling, for the purpose of laying down pipes for the conveyance of gas in and through the city, for the use of the city, and its inhabitants, for the term of years "hereinafter" specified and upon the conditions following, viz: *First*, that the assent of the Council of the said city shall be first had and obtained. * * * *Fifth*, the gas to be furnished by said Company shall be taken and consumed by the inhabitants of the city only on contracts to be entered into between

the Company and said inhabitants, at a rate at no time <span>1875.<br>January Term.</span>
to exceed the sum of three dollars and fifty cents for <span>Gas Company<br>v.<br>Wheeling.</span>
every thousand cubic feet of gas consumed or taken.
*Sixth,* the gas shall be furnished the city as a corporation,
for lighting the public buildings, streets, alleys, and
public grounds, at a rate not exceeding that charged to
the city of Pittsburg by the gas company of that city;
the city furnishing all the lamps, lamp posts and meters
that may be necessary for its use as a corporation.
*Seventh,* if the Council of the city shall, at any time, de-
sire to erect lamps in a part of the city distant from the
line or lines of pipes which may be laid by the Company,
and if the Company shall refuse to extend the pipes for
such purpose, the Council of the city shall have the priv-
ilege of extending the same, and may provide such num-
ber of lamps and pipes as may be necessary for the pur-
pose; and the pipes laid and the lamps thus erected shall
be supplied by the Company with gas, on the same
terms prescribed in the last preceeding condition or
stipulation, and the said lamps shall be subject to the
same regulations as other public gas lamps. The pipes
thus laid down, at the expense of the city, shall not, di-
rectly or indirectly, be used by the Company or city to
furnish gas to individual citizens, nor shall other pipes
be laid down within the portions of the streets, alleys, or
public grounds occupied by the pipes of the city, nor so
as to be supplied by nor through the pipes of the city,
until the Company shall have paid to the city the whole
cost of the pipes laid down by the city as aforesaid. So
soon as the Company shall pay the city the cost of any
such pipes, they shall become the property of the Com-
pany as if the same had been originally laid by them.
*Eighth,* the Company shall be organized under this act,
by a sufficient subscription of stock and the election of
directors within one year from the date of the passage of
this act.

The *fifteenth* section provides that whenever applica-
tion in writing shall be made by the owner or owners of

property upon any street connected with those where the pipes are already laid, the directors shall lay the pipes in said street: *Provided,* That the person or persons so applying shall agree to pay to the Company six per centum upon the cost of such pipes and the necessary fixtures connected therewith, and of laying the same, in addition to the cost of the gas consumed, until the consumption of gas, in the judgment of the directors, shall be sufficient to secure to the Company a permanent net profit of ten *per centum per annum* upon the cost as aforesaid.

The *sixteenth* section provides that the council of the city shall be authorized to pass ordinances for the protection of the works and property of the Company, of any and every kind, from injury, by adequate fines and penalties, and to enforce the payment thereof, in the mode prescribed by the charter of the city.

The *seventeenth* section provides, "that the said Company shall have the sole and exclusive privilege of using the streets, alleys and public grounds of the city for the purpose of lighting the city with gas, for the full term and period of thirty years, from the time said Company shall commence the distribution and supply of gas, of which time notice shall be given by said Company, to be entered amongs the records of said city, the assent of the said city being first had and obtained as hereinafter provided: *Provided always,* That upon the expiration of twenty years from the commencement of said exclusive privilege, hereby granted, and within six months thereafter, the said city of Wheeling shall have the right, at the discretion of the Council thereof, and of which notice shall be given in writing to the said Company, to purchase the said lots or grounds, works, apparatus, fixtures and property of said Company, at the price and upon the terms to be agreed between the Council of the said city and the directors of said Company, or to be fixed, ascertained and determined in the following manner: By the

award, in writing, of three persons to be chosen, the <span style="font-size:smaller">1875. January Term. Gas Company v. Wheeling.</span> first by the directors of said Company, the second by the Council of said city, and the third by the two thus chosen The said arbitrators, in making up their award, and ascertaining the said value, shall have regard alone to the then actual value in money of the lots or grounds, buildings, apparatus, works and fixtures of said Company, and shall not consider the value of the franchises of the said charter, or the dividends or profits arising to the stockholders. Upon complying with the terms of the said award thus made, the said Company shall, by proper deeds, or other instruments in writing, convey and assure to said city of Wheeling, the said lots or grounds, buildings, apparatus, works, fixtures and property of said Company, together with their charter, to be thereafter held, used and employed by the said city, for the benefit of the inhabitants thereof. Upon said purchase being made, as aforesaid, this charter, together with all the franchises, rights and privileges granted, or intended to be granted under it, shall be vested in the said city of Wheeling for the common benefit of the inhabitants thereof. And if, upon the expiration of the said term of twenty years, the said city of Wheeling shall not make the said purchase in the mode and upon the terms prescribed by this section, the said city shall have the right to make the said purchase upon the expiration of any and every succeeding five years, upon the same terms, and in the same mode—at least six months notice of such intention being given in writing to said Company by said city; and all contracts or other acts of said Company, which shall be made, entered into or attempted for the purpose of lessening, impairing or reducing . the value of said lot or grounds, apparatus, pipes or fixtures, rights, franchises and privileges, made in anticipation of the said purchase, shall be utterly null and void."

The *eighteenth* section provides ·that this act shall be in force from its passage.

42

And that the plaintiff also gave in evidence to the jury an ordinance passed by the Council of the city of Wheeling, on the 29th day of April, 1850, by which the assent of the said city was given to the terms, conditions and stipulations contained and set forth in the said act incorporating the said Company, and granted to the Company, so soon, and whenever, organized under the said act, the sole and exclusive privilege of using the streets, alleys and public grounds of the city for the purpose of laying down pipes for the conveyance of gas through the city for the use of the city and its inhabitants, subject to the limitations and restrictions contained in the said act, and repealing the ordinance of the Council of the city, passed on the 13th day of April, 1850, entitled "An ordinance giving the assent of the City of Wheeling to the charter of the Wheeling Gas Company." This ordinance took effect from its passage.

And also gave evidence to the jury tending to prove that $50,000 of the said capital stock of the Gas Company had been subscribed for and taken pursuant to said act. Before the 11th day of May, 1850, and that the Company was on that day duly organized as a corporation, under and by virtue of the said act, and for the purposes therein mentioned; and, also, that the plaintiff held the title in fee of the premises claimed in the declaration, and had the right to the possession thereof at the commencement of this suit.

Thereupon, the defendant gave in evidence to the jury the said ordinance of the city of April 15th, 1850, which gives the assent of the city to the terms, stipulations and conditions contained and set forth in said act and granted to the Company, so soon as, and whenever organized under the said act, the sole and exclusive privilege of using the streets, alleys and public grounds of the city for the purpose of lighting the city with gas; Provided, however, anything in this ordinance contained to the contrary notwithstanding, that the Company shall, before any of the streets, alleys or public grounds are

used or occupied for said purpose, in consideration of the assent hereby given, enter into a contract or agreement in writing with the city, upon the expiration of the term of thirty years after the organization of the Company, to convey to the City, as its sole and exclusive property, all the lots or grounds, works, apparatus, pipes and fixtures, together with the rights, franchises and privileges of the Company, or to the Company in any wise belonging, so as to vest in the city for the common benefit of the inhabitants thereof, the charter aforesaid, with all the franchises, rights and privileges granted under it. This ordinance took effect from its passage.

The defendant also gave evidence to the jury tending to prove that the twenty years from the time the Company commenced the distribution of gas, under and by virtue of the said act, expired on the 1st day of January, 1871; and that the defendant gave notice, pursuant to the act, of its intention to purchase according to the provisions of the seventeenth section of the act, the lots or grounds, works, apparatus, fixtures and property of the plaintiff; and the price and terms of the purchase not being agreed between the Council of the city and the directors of the plaintiff, written negotiations to that end between the parties having proved ineffectual, three persons, viz: Beverly M. Eoff, John McLure and Robert B. Woods, were duly chosen according to said act, and the respective parties notified thereof in writing on or before the 24th day of January, 1871, to fix, ascertain and determine the price and terms upon which the purchase should be made; and that the said three persons did, jointly and together, hear, receive and consider the allegations made and evidence produced before them touching the matter submitted to them on divers days and times after the said 24th day of January, 1871, and before the 29th day of May, 1871; and two of them, viz: Robert B. Woods and John McLure, did, on the 29th day of May, 1871, (the third, Beverly M. Eoff, then and there dissenting therefrom,) make and sign, and cause to

be delivered to the plaintiff and defendant an instrument of writing purporting to be an award of and concerning the premises.

And the defendant then offered to give in evidence to the jury the said instrument of writing which is as follows, to-wit: "To all to whom these present come greeting: Whereas, it is, among other things, provided in the seventeenth section of the act of the General Assembly of Virginia, entitled, "An act to incorporate the Wheeling Gas Company" passed March 18, 1850, that upon the expiration of twenty years from the commencement of the exclusive privilege granted in said act to the said Wheeling Gas Company, and within six months thereafter, the city of Wheeling should have the right at the discretion of the Council thereof, of which notice should be given in writing to said Company, to purchase the lots or grounds, work, apparatus, fixtures and property of said Gas Company, at the price and upon the terms to be agreed upon between the Council of said city and directors of said Company, or to be fixed, ascertained and determined by an award in writing of three persons to be chosen—the first by the directors of said Company, the second by the Council of said city, and the third by the two thus chosen; that the arbitrators thus, chosen, in making up their award, and in ascertaining the value of the property and effects of said Company, should have regard, alone, to the then actual value in money of the lots or grounds, buildings, apparatus, works and fixtures of said Company, and shall not consider the value of the franchises of the charter of said Company or the dividends or profits accruing to the stockholders: And whereas, the said city of Wheeling did, on the 14th day of December, 1870, give notice in writing to the said Gas Company that it claimed the right to purchase the lots or grounds, buildings, apparatus, works and fixtures of said Company; and whereas, the said directors of said Gas Company, by a resolution passed on the 14th day of January, 1871, did choose B.

M. Eoff, arbitrator on its part to fix, ascertain and determine the value of the lots or grounds, &c., of said Company, as is provided for in said seventeenth section of said act of the General Assembly of Virginia; and whereas, the said city of Wheeling did; by a resolution of its Council passed the 18th day of January, 1871, choose or appoint John McLure on its part; and whereas the said B. M. Eoff and the said John McLure did each for himself accept his appointment; and whereas, the said B. M. Eoff and the said John McLure did on the 24th day of January, 1871, meet at the office of the Wheeling Savings Institution, and there and then choose or appoint Robt. B. Woods as the third person to act as provided for in said seventeenth section of said act; and whereas, the said Robt. B. Woods did on the 24th day of January, 1871, accept of said appointment: Now, know ye, that John McLure, Robt. B. Woods and B. M. Eoff, having taken upon ourselves the fixing, ascertaining and determining the value of the lots or grounds, buildings, apparatus, works and fixtures and property of the Wheeling Gas Company, and of fixing, ascertaining and determining the price and terms upon which the city of Wheeling should become the purchaser of the lots or grounds, buildings, apparatus, works, fixtures and property of said Gas Company; and said John McLure and Robt. B. Woods, each having been duly sworn to well and truly ascertain the present value of the lots or grounds, buildings, apparatus, works and fixtures of the Wheeling Gas Company, as is provided for in the seventeenth section of an act of the legislature of Virginia, entitled, 'An act to incorporate the Wheeling Gas Company,' passed March 18, 1850, and a true award make according to the best of their judgment: And having heard, examined and duly considered the allegations, vouchers and proofs and witnesses of the said parties respectively, (B. M. Eoff being at all times present during all examinations and deliberations, and also present at the making of this our award,) we, the said John Mc-

Lure and Robt. B. Woods do make and publish this our award in writing of and concerning the matters referred to or devolving upon us by the provisions of the seventeenth section of the act the General Assembly of Virginia, entitled 'An act to incorporate the Wheeling Gas Company', passed March 18, 1850, as follows, that is to say : with respect to the present actual value in money of the lots or grounds, works, apparatus, fixtures and property of said Gas Company:   We, the said John Mc-Lure and Robt. B. Woods do award, adjudge and ascertain the value to be the sum of seventy three thousand and six hundred and thirty-seven dollars and fifty cents, ($73,637.50.)   And with respect to the price and upon the terms the said city of Wheeling shall become the purchaser of the lots or grounds, works, apparatus, fixtures and property of the said Wheeling Gas Company, we, the said Jno. McLure and Robt. B. Woods do award, fix, ascertain and determine that the said city of Wheeling shall become the purchaser of the said lots or grounds, works, apparatus, fixtures and property of the Wheeling Gas Company upon its paying or causing  to be paid to the said Gas Company on or before the 30th day of June, 1871, the sum of $73,637.50.   In witness whereof we have hereto set our hands, this the 29th day of May, 1871.

ROBT. B. WOODS.
JNO. McLURE.

I dissent from the above
May 29, 1871.                        B. M. EOFF."

Thereupon the plaintiff objected to the said instrument of writing being given in evidence to the jury, upon the ground that it was and is, of no force, effect or validity as an award under the aforesaid act of the General Assembly of Virginia, and could not and did not confer on the defendant any right to the real estate in the declaration mentioned, or the possession thereof. But the court overruled the objection, and permitted the said instrument of writing to be given in evidence to the jury by the defendant.   To which opinion and ruling of the court the plaintiff excepted in due form.

By bill of exceptions No. 2 it appears, that after the jury were sworn to try the issue joined, evidence was given to them, as set forth in bill of exceptions No. 1, including the said instrument of writing purporting to be an award, and the dissent thereto, and thereupon the defendant further gave in evidence to the jury tending to prove as follows, viz : That the defendant, by its gas commissioners thereto lawfully authorized by resolution of the city Council, passed May 30, 1871, did on the first day of June, 1871, after the said instrument of writing, purporting to be an award, was signed and delivered to the parties as aforesaid, tender to Jacob Hornbrook, president, and George R. Tingle, secretary and treasurer of the plaintiff, at the office of the plaintiff in the city of Wheeling, $73,637.50 in lawful money, as and for the price to be paid by the defendant to the plaintiff pursuant to the said instrument of writing, purporting to be an award, for the lots or grounds, works, apparatus, fixtures and property of the plaintiff ; and the said president and secretary then and there declined to receive said money, and gave as a reason, that they had no authority to receive said money, but would call a meeting of the directors of the plaintiff on the 2d day of June, 1871, and report thereto ; that the defendant, by its commissioners, also tendered to the said president and secretary, at the same time and place, the draft of a proper deed to convey to the defendant the said property of the plaintiff, together with the said charter, which draft the president received, and did not then examine it ; that by the by-laws of the Gas Company, established by the stockholders, "The board of directors are authorized to appoint a secretary, (who shall also perform the duties of treasurer) and such other officers as may be required to manage the affairs and conduct the operations of the Company ;" that the defendant, by its said commissioners, and the mayor of the city, who was present, then and there notified the said president and secretary that the sum of money so tendered would be de-

posited in the Merchants' National Bank of West Virginia at Wheeling, subject to the order of the plaintiff; and also notified the said president and secretary that the defendant claimed possession of all the property held by the plaintiff, and that they would proceed to take possession of said property, to which the said president and secretary made no response, but subsequently the plaintiff, by the said president and secretary gave evidence tending to prove that they did not understand that the notification as to the intention to take possession, was so given ; that the defendant, by its said commissioners, then deposited the said sum of money in said Bank subject to the order of the plaintiff, and immediately proceeded to the works of the plaintiff in the city to take possession thereof, including the real estate in the declaration described, no resistance or objection thereto being made by the superintendent or laborers employed by plaintiff at the works in the manufacture of gas, or by the president, secretary, or any stockholder of the Gas Company. The testimony as to whether the president and secretary of the Company were aware of the intention of the city to take possession of the works and other property, was conflicting. None of the officers of the Company, save the superintendent, were present when the possession was so taken by the city, nor was any stockholder then present ; that possession was taken as aforesaid by the defendant during the afternoon of June the 1st, 1871, and the defendant has ever since held possession of the real estate and works aforesaid, and exercised the franchises and privileges specified in said act of the General Assembly of Virginia, and ordinance of the Council of the city ; that the said gas commissioners had been authorized by the defendant before the 1st day of June, 1871, to procure the sum of money necessary to make the said tender, by borrowing the same in the name and on behalf of the defendant, from the several banks of the city, and and for this purpose made application in person, at or shortly before, noon on the 1st day of June, 1871, to the

directors of the First National Bank at Wheeling, for a loan of ten thousand dollars; that the said Jacob Hornbrook was one of the directors of the last named Bank, and was present as such at the meeting of said directors to which the said application was made, and that said directors unanimously directed the said loan to be made; that the said commissioners, during said meeting, informed the said Hornbrook that they wished to see him at 2 o'clock, P. M., of that day at the office of the plaintiff, and said Hornbrook thereupon agreed to meet them there at that time, and that on the same day, and before 12 o'clock, M., of said day, one of said commissioners met the said Hornbrook on the street and notified him of their desire to meet him at the office of plaintiff at 2 P. M., of that day, to make a tender of the said money, and that said Hornbrook then and there agreed to meet them at the time and place indicated; that during the eight months preceding the 1st day of June, 1871, there had been but three meetings of the board of directors of the plaintiff; that said board, including the president, consisted of seven members, two of whom (including the president as one of the two,) resided about four miles from the office of the plaintiff, and the other five resided and did business within a quarter of a mile, or less, from plaintiff's said office; that in a suit in chancery, then pending in said court, wherein the plaintiff in this cause was complainant, and the defendant in this cause, with others, were defendants, an order in these words was entered on the 25th day of November, 1871, respecting the sum of money so deposited in the said National Bank:

"SATURDAY, November 25, 1871.

The Wheeling Gas Company
          v.                         } In Chancery.
The City of Wheeling and others.

On motion of the plaintiff, it is ordered, without prejudice to the rights of any party to this cause, that the

sum of $73,637.50, deposited by the defendant, the city of Wheeling, in the Merchants' National Bank of West Virginia, at Wheeling, subject to the order of the plaintiff, be paid to Daniel C. List, the receiver of this court."

The plaintiff then gave evidence to the jury tending to prove that the board of directors and stockholders of plaintiff had not, nor had either of them, conferred any authority on or upon the said president and secretary and treasurer of the plaintiff, or either of them, to accept the money so tendered as aforesaid, or to execute, or agree to execute, on behalf of the plaintiff the said draft of a deed, or any authority upon the president, secretary and treasurer, superintendent and laborers, or any one or more of them to give to the defendant possession of the said works and real estate, or assent to the defendant taking possession thereof; that a meeting of the directors of the plaintiff was called and held on the 2d day of June, 1871, as the president and secretary had, on the previous day, promised to the said gas commissioners would be done; and that the proceedings aforesaid of the defendant, being reported by the president and secretary to the said meeting, the directors of the plaintiff thereupon adopted this resolution:

" *Resolved,* That notice be given through the newspapers of the city to the stockholders of the Wheeling Gas Company to meet at Hornbrook's Hall, Main street, at two o'clock Tuesday, 6th of June."

That the stockholders of the plaintiff met on the 6th day of June, in general meeting, pursuant to the said resolution and the notice given thereunder, and at the said meeting the following proceedings were had, viz:

"WHEELING, June 6, 1871.—Pursuant to a call through the city papers, a meeting of the stockholders of the Wheeling Gas Company was held at Hornbrook's Hall, at two o'clock this day, a large majority of the stock being present in person and by proxy. The meeting was called to order, and Major A. Loring elected chairman

and Alexander Laughlin secretary. D. Lamb, Esq.,

stated the object of the meeting. Jacob Hornbrook and George R. Tingle, Esqs., made statements as to the manner in which a tender was made by the city of Wheeling, and also as to the manner in which the city took forcible possession of the works. Dr. J. C. Campbell offered the following resolution:

"*Resolved by the stockholders of the Wheeling Gas Company in general meeting assembled,* That the president and directors of the Company be and are hereby directed to employ all such counsel and take all such measures as they may deem expedient and proper to maintain the rights and interests of the Company in relation to the matters now in controversy between the Company and the city of Wheeling, and to appoint such committees and agents for the purpose as they deem necessary.

"The resolution was unanimously adopted. On motion of C. D. Hubbard, Esq., it was

"*Resolved,* That when this meeting adjourn, it does so to meet on Wednesday, the 5th day of July, 1871, at two o'clock.

"On motion of A. B. Caldwell, Esq., the meeting then adjourned."

That at a meeting of the directors of the plaintiff, held on the 10th day of June, 1871, the following preamble and resolutions were adopted, viz:

"The stockholders of this Company having authorized the directors to act in relation to the matter in controversy between the Company and the city of Wheeling:

"1. *Resolved,* That we do not acquiesce in or accept the valuation of the property and works of the Company lately made by Messrs. Woods and McLure.

"2. *Resolved,* That we protest against the acts of the city authorities in taking forcible possession of the works and property of the Company, and proceeding to exercise its corporate franchises as wholly unwarranted in law."

"3. *Resolved*, That a copy of these resolutions be communicated to the Council of the city by the president of this Company."

Which preamble and resolutions were accordingly communicated by the plaintiff to the Council of the city of Wheeling, at a meeting of said Council, June 13th, 1871. The defendant also gave evidence that there was no meeting of the stockholders of the Gas Company, and no election of directors or officers from July 10th, 1871, until August 12th, 1873. Whereupon the plaintiff moved the court to exclude from the consideration of the jury the aforesaid instrument of writing, purporting to be an award, and the evidence aforesaid respecting the tender of said money and draft of a deed, and said subsequent proceedings of the defendant, upon the ground that said instrument, purporting to be an award, together with the tender as aforesaid, and the possession so taken and held by the defendant, do not constitute a defence, of which the defendant should be allowed to avail itself of in the present action. But the court overruled the motion and refused to exclude the said instrument of writing, and the evidence respecting the said tender and subsequent proceedings of the defendant from the jury. To this opinion of the court the plaintiff also excepted in due form.

Bill of exceptions No. 3 states that after the evidence was given to the jury as stated in bills of exception Nos. 1 and 2, the plaintiff moved the court to instruct the jury that the matters so given in evidence, on behalf of the defendant, do not constitute such an equitable right to the possession of the premises described in the declaration, as bars the right of the plaintiff to recover possession thereof in the present action, and the jury should therefore find for the plaintiff. But the court refused to give the instruction, and the plaintiff again excepted in due form.

Bill of exceptions No. 4 shows that after evidence was given to the jury as stated in bills of exceptions Nos. 1 and 2, the plaintiff moved the court to instruct the jury, "that if the paper writing, signed 'Robert B. Woods,' 'John McLure,' and dated the 29th day of May, 1871, be a valid award under the act of the legislature of Virginia, passed March 18th, 1850, entitled, 'An act to incorporate the Wheeling Gas Company,' and the sum of money mentioned in said ,award, was duly tendered by or on behalf of the defendant, to the plaintiff, together with a proper draft of a deed to be executed by the plaintiff to the defendant, nevertheless, such award and tender would not operate as a conveyance or transfer to the defendant, of the lot or grounds, works, apparatus, fixtures or property of the plaintiff, in such award mentioned, as to entitle the defendant to dispossess the plaintiff thereof, or withhold the possession thereof from the plaintiff. This instruction the court also refused to give, and the plaintiff excepted to the ruling of the court in due form.

By bill of exceptions No. 5, it appears that after evidence was given to the jury, as stated in said bills of exception Nos. 1 and 2, the plaintiff moved the court to instruct the jury that the evidence offered by the defendant, as set forth in bills of exception Nos. 1 and 2, is not an equitable defense as is contemplated by chapter ninety of the Code of West Virginia, and should not be considered by the jury. But the court refused to give this instruction to the jury, and the plaintiff excepted to the opinion of the court in due form.

By bill of exceptions No. 6, it appears that after evidence was given to the jury as set forth in said bills of exception Nos. 1 and 2, the plaintiff moved the court to instruct the jury that the equitable title as set up as a defense to this action, a proper legal tender must, among other things, be proven to the satisfaction of the jury.

This instruction as asked was refused, and the plaintiff excepted.

By bill of exceptions No. 7, it appears that after evidence was given to the jury as set forth in said bills of exception Nos. 1 and 2, the plaintiff moved the court to instruct the jury that unless the jury are satisfied from the evidence that the alleged tender was made to persons authorized to accept the same, then the same is invalid, and must be disregarded by the jury. This instruction the court also refused to give, and the plaintiff excepted.

By the bill of exceptions No. 8, it appears that after evidence was given to the jury, as set forth in said bills of exception Nos. 1 and 2, the plaintiff moved the court to instruct the jury that the act of incorporation of the Wheeling Gas Company, passed March, 1850, did not give to the president and secretary authority to accept the tender alleged to have been made on the 1st of June, 1871, and that to make the same valid it must appear that they were authorized by the Company, or the directors thereof, to receive the same. This instruction the court also refused, and the the plaintiff excepted.

By bill of exceptions No. 9, it appears that after evidence was given to the jury as stated in said bills of exception Nos. 1 and 2, the plaintiff moved to court to instruct the jury that if the jury believe from the evidence that the city of Wheeling did, on the 1st day of June, 1871, at the office of the plaintiff, tender the president and secretary of the plaintiff the sum of money specified in the instrument of writing signed "Robert B. Woods," "John McLure," and dated the 29th day of May, 1871, and did, also, then and there, tender to the said president and secretary, and demand the execution of a proper draft for a deed to convey and assure to the said city of Wheeling the lots or grounds, buildings, apparatus, works, fixtures and property of the plaintiff, together

with its charter, then the said president and secretary

had no authority, by virtue of the act of the General Assembly of Virginia, passed March 18, 1850, entitled "An act to incorporate the Wheeling Gas Company;" or by virtue of their said offices to accept or receive the money so tendered, or execute on behalf of the plaintiff, the said draft for a deed unless specially ordered or authorized so to do by the directors or stockholders of the plaintiff, and the tender of the said money and draft, for a deed would be no justification to the defendant in dispossessing or ousting the plaintiff of the premises specified in the declaration. This instruction the court also refused, and the plaintiff excepted.

By the bill of exceptions No. 10 it appears that after evidence was given to the jury as set forth in said bills of exception, Nos. 1 and 2, the plaintiff moved the court to instruct the jury, that if the jury believed from the evidence, that the city of Wheeling, by its gas commissioners, duly authorized, in that behalf, by it, did, on the first day of June, 1871, at the office of the plaintiff tender to the president and secretary of the plaintiff the sum of money specified in the paper writing signed "Robt. B. Woods," "Jno. McLure," and dated the 29th day of May, 1871, as and for the sum to be paid to the plaintiff for the lots or grounds, works, apparatus, fixtures and property of the plaintiff in the said paper mentioned, and further believe from the evidence that the said president and secretary had not in fact, nor had either of them, any authority, from the plaintiff, to accept or receive the money so tendered, then the tender as aforesaid is of no effect against the plaintiff. This instruction the court refused to give and the plaintiff excepted.

By bill of exceptions No. 11 it appears that after evidence was given to the jury, as stated in said bills of exception, Nos. 1 and 2, the plaintiff moved the court to instruct the jury, that if the jury believed from the evidence that under and pursuant to the act of the legislature of Virginia passed March 18, 1850, entitled "An

act to incorporate the Wheeling Gas Company" three persons were chosen to fix, ascertain and determine the price and terms upon which the defendant was to purchase the lots or grounds, works, apparatus, fixtures and property of the said plaintiff, and that two, only, of the three persons signed the paper writing purporting to fix, ascertain and determine the said price and terms, the third dissenting therefrom, then such paper writing is no award under said act, and is not binding on either party to the suit. This instruction the court also refused to give and the plaintiff accepted.

By bill of exceptions No. 12 it is shown that after evidence was given to the jury as set forth in the said bills of exception Nos. 1 and 2, the defendant moved the court to instruct the jury, that if the jury believe from the evidence, that the defendant, by its authorized agents, on the first day of June 1871, at the office of the plaintiff, tendered to the president and secretary of the plaintiff the sum of money specified in the award of the 29th day of May, 1871, as and for the ascertained price or value of the premises in controversy and the property in said award referred to, and also a draft of a deed for said property to be executed by the plaintiff to the defendant and that afterwards, and before the 30th day of June, 1871, the board of directors or the stockholders of the Wheeling Gas Company, in meeting assembled, with knowledge of such tender, formally refused to accept or comply with the provisions of said award, and gave notice of such decision to the defendant then the action of the defendant was a sufficient compliance with the said award. To the giving of this instruction to the jury by the court the plaintiff objected and the court overruled the plaintiff's said objection and the plaintiff accepted.

To the judgment of the circuit court, rendered in this cause, the plaintiff has obtained a *supersedeas* from one of the Judges of this Court, and in his petition for the *super-*

*sedeas* he assigns as error in said judgment the rulings and opinions of the circuit court in each of said twelve bills of exception mentioned and specified, and he relies upon them as being sufficient to authorize this Court to reverse the final judgment rendered in the cause by the circuit court, and to remand the cause to the circuit court for further proceedings therein to be had.

No errors have been assigned or argued before us except those above referred to.

I deem it proper before proceeding to consider the questions to be determined in this cause, to refer to, and state some legislation had prior and subsequent to the passage of the said act incorporating the Wheeling Gas Company which may have some bearing or shed some light upon the most material questions presented by the record.

On the 13th day of February, 1837, the General Assembly of Virginia passed an act, entitled "An act prescribing general regulations for the incorporation of manufacturing and mining companies." The fifteenth section of this act is as follows: "15. That all acts for the incorporation of manufacturing or mining companies passed after the passage of this act, shall continue in force for the period of thirty years, and no longer, and shall at all times, after the lapse of fifteen years from the organization of the company, be liable to be amended or repealed at the pleasure of the legislature, in the same manner as if an express provision to that effect was therein contained, unless there shall have been inserted in such act of incorporation an express provision to the contrary."

The code of Virginia of 1849, was passed by the said General Assembly in the month of August, 1849, and its provisions become "in force *upon* and after" the first day of July, 1850. By the seventeenth section of the

44

sixteenth chapter of the code of Virginia, of 1849, it is, among other things, provided "17. In the construction of all statutes the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature :

"*Rule Third :* Words purporting to give authority to three or more public officers or other persons, shall be construed as giving such authority to a majority of such officers or other persons; unless it shall be otherwise expressly declared in the law giving the authority."

By the seventeenth section of chapter thirteen, of the Code of West Virginia it is provided, among other things, as follows : "17. The following rules shall be observed in the construction of the statutes, unless a different intent on the part of the Legislature be apparent from the context. *Second.* Words purporting to give a joint authority to three or more persons, confer such authority upon a majority of them and not upon a less number." The said act of February 13, 1837, was in force at the date of the passage of the act incorporating the plaintiff, so far as I am at present advised, and the fact of its being then in force was not controverted by the counsel for the plaintiff.

No question has been made or argued here touching the sufficiency of the declaration, and, on examining it, I think there can be no question as to its being good.

The *first* question to be determined upon errors assigned is, whether the instrument of writing dated the 29th day, of May, 1871, purporting to be an award, is a valid and binding award. If it is not, then all other errors assigned are immaterial and unnecessary to be determined; because they are predicated upon the award being invalid. But if the award is valid, then the most important question in the cause is with the defendant, and other errors assigned must be determined, because they fairly arise upon the record, and are material and necessary to a proper judgment to be rendered in the

cause by this Court. To the end that a just and correct conclusion may be had as to whether the said instrument of writing is a valid award or not, it is indispensible that the true purpose, object, meaning and intent of so much of the seventeenth section of the act of March 18, 1850, incorporating the plaintiff, as refers to the subject shall be considered and ascertained. And in considering it for this purpose, by all just rules of construction, I am clearly authorized to examine and consider any and all other sections of the act in connection therewith which may bear on, or give light upon, or aid in ascertaining the purpose, object, intent and meaning of the section in question. On examination of the fourteenth and seventeenth sections of the act of incorporation, it will be seen that the plaintiff is given the exclusive privilege of using the streets, alleys and public grounds of the city of Wheeling for the purpose of laying down pipes for the conveyance of gas in and through the city, and of using the streets, alleys and public grounds of the city for the purpose of lighting the city with gas, with the privilege and authority to charge the inhabitants $3.50 for each thousand feet of gas consumed by them, though a fair, reasonable and just compensation might be greatly less, and to charge the city, as a corporation, for lighting the public buildings, streets, alleys and public grounds at a rate not exceeding that charged to the city of Pittsburg by the gas company of that city, no matter whether that rate, when considered in connection with the actual cost of manufacturing and supplying the gas by plaintiff, was exorbitant and unjust or not. It is apparent that there might be conclusive reasons why the manufacturing and furnishing gas for lighting the public buildings, streets, alleys and public grounds in the city of Wheeling would cost much less per thousand feet than in or at the city of Pittsburg for lighting the streets of the latter city. Again, the act does not absolutely require the plaintiff to lay down gas pipes in all the streets and alleys of the city. The only re-

quirement on this subject is that the plaintiff shall complete the gas works with sufficient apparatus to supply gas for not less than two thousand burners, and shall lay down not less than ten thousand feet of gas pipes for conducting gas through the streets, alleys or public grounds of the city on or before the 1st day of December, 1851, and the provisions of the fifteenth section, before stated. The act creates in the plaintiff, with the assent of the Council of the city, a monopoly in the manufacture and supply of gas for the city as a corporation, and the inhabitants thereof, with the power, it may be, of extorting excessive charges for the gas made and supplied for twenty years at least, and if the city fails to make the purchase, thirty years. The exclusive privileges as to the streets, &c., and great powers given the plaintiff as to charges for at least twenty years, in such a city as Wheeling was in 1850, it is not difficult to see might be a strong inducement to any company to organize under the provisions of the act, with the assent of the city, especially, when at the expiration of the twenty years, if they lost their monopoly, they would receive compensation for their lots or grounds, works, apparatus and property. On the other hand, it is not difficult to see that the purpose of the legislature, by granting the exclusive privileges and monopoly before named, with the assent of the Council of the city, for at least the period of twenty years, was to hold out a strong inducement to the formation of a company for the purpose of maufacturing and supplying gas for the city, as a corporation, and for its inhabitants. But while the legislature, with the assent of the Council, granted the exclusive privileges mentioned in the act as an inducement, it was certainly wise, prudent and judicious in the legisture to provide a certain, effective and speedy mode and remedy by which the city of Wheeling might be enabled to completely divest itself and its inhabitants of the monopoly, especially if the experience of twenty years demonstrated, in the judgment of the Council of the city,

that the interest and prosperity of the city and its inhabitants would thereby be promoted and benefitted. That the purpose and intent of the legislature was, by the said seventeenth section, to make such provision and give such remedy and relief to the city, there can be no reasonable doubt from the face of the act. At the end of the twenty years contemplated by the act, which all parties agree was the 1st of January, 1871, the Council of the city, after giving due notice to plaintiff in accordance with the provisions of the *act*, sought to relieve the city and its inhabitants, of the plaintiff as a corporation, with the exclusive privileges aforesaid, by the purchase of the plaintiff's works, grounds, lots, fixtures, apparatus and property, at their value, in both the modes prescribed by the said seventeenth section.

*First*, the Council of the city sought to make the purchase by negotiation and agreement with plaintiff, as to the price and terms, and failing to negotiate the purchase in this way, they resorted to the only other remedy to enforce its right to make such purchase specified in said seventeenth section, and that was by the choice of three persons, the *first* by the directors of the plaintiff, the *second* by the said Council, and the *third* was chosen by the two thus chosen, to make an award as to the price to be paid for the plaintiff's said property, and the terms of the purchase according to the provisions of said seventeenth section. All this, it was admitted in argument, was done in pursuance of said seventeenth section, and in accordance with its provisions upon that subject. The persons thus chosen, who are called arbitrators in the said seventeenth section, accepted and took upon themselves the duties and burthens prescribed by said seventeenth section, and after jointly meeting, acting and hearing the allegations of the parties, and such evidence as the parties adduced before them, touching the subject of their inquiry, the three persons thus chosen to make an award in the premises, for some cause, failed to agree upon the value of the property, and the terms of the

purchase; but two of them did agree, and in the presence of the other person chosen, made and signed the said instrument of writing, dated the 29th day of May, 1871, as and for an award, under and by virtue of said seventeenth section; but the other person chosen, and who was chosen by the plaintiff, dissented from the award so made and signed, and at the same time endorsed his dissent on the award, with his signature thereto. The award thus made fixed the value or price to be paid by the defendant for all the property specified in the said seventeenth section, and the terms of the purchase in strict accordance with the provisions of said section. Is said instrument of writing, dated the 29th day of May, 1871, and made, agreed to and signed by only two of the persons chosen as aforesaid, valid as an award, under the circumstances stated in the premises and the true intent and meaning of the provisions of said seventeenth section? The circuit court held that it was a valid award. The plaintiff maintained and insisted before the circuit court that it is not a valid award, and so argues and insists here upon the sole ground that it was not agreed to and signed by one of the persons chosen as aforesaid.

In modern times courts regard the settlement of controversies and disputes between persons by arbitration with more favor than formerly, and for the purpose of sustaining awards, ordinarily, they construe both the submission and award liberally. In interpreting the submission regard is principally to be had to the intention of the parties, and a fair and liberal construction is to be adopted, without too great verbal accuracy. The court will transpose or reject insensible words. Caldwell on Arbitration, 2d Am. ed. 65. The courts will always seek to uphold a submission in spite of a defect in formality, *according to the obvious intent of the parties.* Morse on Arbitration and Award 47, and the cases there cited in note 6. The courts will always seek to put as liberal, large and comprehensive a construction upon the

submission as the apparent intent of the parties to it will admit; *Id*. 59. Where the submission is by no means so definite or certain as it should be, yet if the deficiency can be easily and surely supplied, the courts will seek to uphold it. *Id*., 61. Though courts wish to have a submission and award terminate as many disputes as are reasonably and rightfully within its scope, still disputes obviously not included, though so cognate that their annexation would have been highly natural and proper, will not be added by a forced construction. *Id*. 64. Morse in his work on Arbitration and Award, 162, says: "Unless the statute or submission, under which the arbitrators act and derive their authority, provide to a contrary effect or unless a contrary intention of the parties can be clearly and unmistakably gathered from the submission and attendant facts, the rule is general and imperative that all the arbitrators must unite in the award in order to render it valid. A different rule is allowed to prevail in matters of public concern. Where persons are charged with the performance of public duties the decision of a majority is usually accepted. So it is with a bench of judges, where the concurrence of a majority constitutes the decision of the court. But a submission to arbitration is a delegation of power for a mere private purpose and the concurrence of all intrusted with the power is necessary to its due execution." And in support of this proposition he refers to a number of authorities in note 2. But on page 163, Mr. Morse, under the head of "award by a majority," says: "The authorization of a majority to make a valid decision, need not always be made in distinct terms. If it can be clearly gathered from a necessary implication, it may suffice." On the same page he states the case of *Phippen v. Stickney*, 3 Metc. (Mass.,) 384, as "a peculiar case in which unanimity was dispensed with." He also cites the cases of *Battey v. Button*, 13 Johns (N. Y.) 187, and *Maynard v. Frederick*, 7 Cush. (Mass.) 247. In the case of *Eames v. Eames*, 41 N.

Hamp. 177, Fowler, Judge, in delivering the opinion of
the court, says, on page 181: "It is well settled that
when a submission, by parol or in writing, is made by
private parties to a given number of persons, without
any express authority, given or to be inferred from the
manner or circumstances of the submission, that a smaller
number may decide, an award or decision will be void
unless made by all; though a different rule prevails where
authority is confided to several persons in matters of pub-
lic concern." A part of the syllabus of the case is in the
language of the Judge, see page 177. In the case of
*Green v. Miller*, 6 Johns. (N. Y.) 39, the syllabus is
"where an authority is confided to several persons, for a
private purpose, all must join in the act; *aliter* in mat-
ters of public concern." And Judge Thompson in de-
livering the opinion of the court, in the case from which
the syllabus is taken, says: "I am, however, satisfied
that as a submission to arbitration is a delegation for a
mere private purpose, it is necessary that all the arbitra-
tors should concur, unless it is otherwise provided by
the parties. In matters of public concern a different
rule seems to prevail." This was a case of submission,
by private parties, for a purely private purpose, and was
altogether of private concern. In the case of *Patterson
v. Leavitt*, 4 Conn. 50, the Chief Justice in delivering the
opinion of the court, says: "If a power be of a public
nature, the majority may perform the act delegated, the
power being considered joint and several." And he re-
fers in his opinion to 1 Bos. & Pul. 229; *King v. Beetson*
3 Term 592, and *Withnell v. Gartham*, 6 Term 388. See
also case of *Ex parte Charles Rogers & Walter Rogers*,, 7
Cowen. (N. Y.) 526, and also note (a) appended to the
case; *Sinclair v. Jackson*, 8 Cowen. (N. Y.) 543. In the
case of *Young v. Buckingham*, 5 Ohio 489, it was decided
that commissioners to appraise lands to be condemned for
the use of a toll bridge across the Muskingum river,
which was held to be a public use, the concurrence of a
majority binds the minority. In that case the commis-

sioners were appointed by the court, and they were all
present and acting but only two united in the appraise-
ment. But see case of *Jefferson Railroad v. Mounts*, 7
Ind. 669. Morse in his said work, page 164, under the
head of "the rule concerning Referees," says: "A
contrary rule holds good in case of referees, and the re-
port of a majority of them is valid. For they are at least
*quasi* public officers, persons appointed under a general
statute, to perform a judicial duty." See his references in
note 1, appended. See also Caldwell on Arbitration
2 Am. ed. 204 in note 1, commencing on p. 203.

The city of Wheeling is a municipal corporation.
She, as a corporation. was created by state legislation.
As a corporation the State may increase or diminish her
powers. She is subject to the legislative will of the
State, and may be extinguished by the Legislature at its
pleasure. She exercises a part of the sovereign power
of the State. She is a part of its governmental power.
She is not subject to taxation by Congress upon her mu-
nicipal revenues. *United States v. Railroad Company*,
17 Wall. (Sup. Ct. U. S.) 322 ; Dillon on Corporations,
vol. 1, ch. 4; Angel and Ames on Corporations, sections 16
and 31. In the case of the *City of Richmond v. Long's
Admrs.*, 17 Gratt., 375, Judge Rives, in delivering the
unanimous opinion of the court, says : "The functions
of such municipalities are obviously two fold ; *first,* po-
litical, discretionary and legislative, being such public
franchises as are conferred on them for the government
of their inhabitants, and the ordering of their public of-
ficers, and to be exercised solely for the public good rather
than their special advantage ; and *secondly,* those ministe-
rial, specified duties which are assumed in consideration
of the privileges conferred by their charter. Within
the sphere of the former, they are entitled to this ex-
emption, in as much as the corporation is a part of the
governmemt to that extent, its officers are public officers,
and as such entitled to the protection of this principle ;

45

but within the sphere of the latter, they drop the badges of their governmental offices and stand forth as the delegates of a private corporation in the exercise of their private franchises, and amenable, as such, to the great fundamental doctrine of liability for the acts of their servants." See, also, *De Voss v. City of Richmond*, 18 Gratt., 341 ; *Bailey v. The Mayor of the City of New York*, 3 Hill, (N. Y.) 531. But see, also, on this subject, *per contra*, to same extent, the note of Judge Dillon, in his work on Corporations, to section thirty-nine of chapter four, (vol. 1, p. 152) and also *Darlington v. Mayor*, *&c*, 31 N. Y., 164 ; 17 Wall. (Sup. Ct. U. S.) 322. The opinion of the court in the last named case certainly concedes very great power to the legislature of a state over municipal corporations. On pages 331 and 332 of that opinion, it is said : "The power in question was conferred because its exercise concerned the public and to benefit that public. This power could, no doubt, have been imposed and its exercise directed without the assent or against the wish of the corporation or its citizens. The state could do it for and on behalf of the city, and without its intervention. The city could act only by authority from the state. The state is itself supreme, and needs no assent or authority from the city. It is not perceived that the act is less public and municipal in its character than if the state had compelled the city to lay the tax and make the appropriation of the proceeds to the railroad." (The court here has reference to the city of Baltimore raising money by the sale of its bonds to the extent of some five millions, and taking stock to that amount in the Baltimore and Ohio Railroad Company.) The court then cites with apparent favor the case of the *Town of Guilford v. The Board of Supervisors of Chenango County*, 3 Kernan (N. Y.) 143. See on this subject Cooley's Con. Lim., 3d ed., under the head of "Legislative Control of Corporate Property," pp. 235, 236, 237, 238, 239, and the many authorities there cited.

In the case under consideration the seventeenth section of the act expressly gives the right to purchase by the city, and provides that upon said purchase being made as aforesaid, this charter, together with all its franchises, rights and privileges granted, or intended to be granted, under it, shall be vested in the said city of Wheeling for the common benefit of the inhabitants thereof—and also directs that the plaintiff, upon the award being complied with by proper deeds or other instruments of writing, convey and assure to the city of Wheeling the said lots or grounds, buildings, apparatus, works, fixtures and property of said Company of plaintiff, together with "this charter," to be thereafter held, used and enjoyed by the "said city" for the benefit of the inhabitants thereof. Again, in the fourteenth section of said act, it is substantially declared that the gas furnished by the plaintiff shall be taken and consumed by the inhabitants of the city, and shall be furnished to the city, as a corporation, for lighting the public buildings, streets, alleys and public grounds. The legislature, in authorizing the purchase, evidently contemplated that the city would use said gas works, &c.. in the manufacture and furnishing gas for the consumption of the inhabitants, and for lighting the public buildings, streets, alleys and public grounds within the city for the benefit of the inhabitants thereof—in other words, the public—and that the money with which the purchase should be made, should be raised or paid, ultimately, by taxes imposed by the city on the corporators thereof. The authority to purchase was evidently given for the benefit of the municipality in the course of its municipal business or duties. In other words, the city was acting in its capacity as agent of the State, delegated to exercise certain powers for the benefit of the municipality called the city of Wheeling. The legislature, and the authorities of the city of Wheeling, decided that the investment in the purchase of the gas works, &c., might or would be an act for the benefit of the inhabi-

tants of the city of Wheeling and of the municipality. Good gas light in a city, and plenty of it, is in material respects almost as convenient and important to the corporators and public as the streets and alleys, and the cheaper it is furnished the less the burdens of the corporators. It seems to me, all things considered, that in some aspects, at least, the purchase of the said gas works, &c., was authorized for a public purpose, and that the public interest was and is concerned to some material extent therein and in the making of said award. I admit that a municipal corporation may incur liabilities, by contract, and in some other respects for which it may be sued and a recovery had against it as against a private corporation, as abundantly appears by the cases before cited in 17 and 18 Gratt. And in these respects, and perhaps others, a municipal corporation possesses some of the characteristics and qualities of private corporations. Under the views I have advanced the public had some interest, and was and is concerned, to some extent, in said purchase and award, and if that is correct, then according to some of the authorities I have cited, the award agreed to and signed in this case by two of the arbitrators is valid, although the third arbitrator dissented. But on account of the seeming confusion of the authorities on the subject, and as I do not deem it material under the view I take of the award in other respects to finally determine it now, the right to reconsider and re-examine the question in a proper future case is reserved and left open.

I proceed to further examine this award in other aspects, and, after so doing, I am of the opinion that the said instrument of writing, dated the 29th day of May, 1871, and purporting to be an award, is, under the circumstances, a valid award, although it was agreed to and signed by only two of the arbitrators so agreeing. It is manifest, as I think, and clearly inferrible, from the reading of the act by which plaintiff was incorporated, that

it was the intent and purpose of the legislature, by its provisions and manifest objects:

*First.* That the Council of the city should have, and was given by the said seventeenth section, in their discretion, the absolute right to purchase the gas works and property, and become possessed thereof, after the expiration of the twenty years aforesaid, and that the purchase should be made at the price and upon the terms to be agreed upon between the Council of the city and the directors of the plaintiff, or by an award in writing, fixing the price and terms of the purchase, made by arbitrators.

*Second.* That, in the event the Council of the city elected to make the purchase, and the Council of the city and the directors of the plaintiff could not agree upon the price and the terms of the purchase, the price and the terms *should* be fixed, ascertained and determined, *at all events*, by an award of the arbitrators.

*Third.* That the remedy given by arbitration *should* be complete, effective and reasonably expeditious.

*Fourth.* That it should not be absolutely essential or necessary to the validity of the award that more than a majority of the arbitrators should agree to and sign the same—they all acting jointly.

*Fifth.* That the price and the terms of the purchase should be fixed, ascertained and determined by the arbitration, and the purchase and possession of the gas works, property, &c., by the Council of the city, *should* be completed and had by the city upon its complying with the terms of the award so made as aforesaid, or in good faith offering to do so by a legal tender of the money specified, or the equivalent of a legal tender, at or within the time prescribed by the award. It would be a discreditable reflection upon the wisdom and foresight of the legislature to suppose that it had given the Council of the city an absolute right to purchase the gas works, property, &c., in their discretion, at their reasonable value, excluding the value of the franchise of the charter and the

dividends or profits accruing to the stockholders, and had provided specifically but two modes or remedies by which the price and terms of the purchase was to be fixed, ascertained and determined, neither of which was reasonably certain; and either of which could easily be defeated by the act of the plaintiff. It was not reasonably certain that the Council, and the plaintiff's directors, could or would agree upon the price or terms of the purchase; and while it was probable that three persons chosen in the manner specified by the seventeenth section might agree, still there was and could be no reasonable certainty or assurance that they would all agree upon the price and terms of the purchase, and make and sign an award accordingly; but it was not only probable, but reasonably certain, that a majority of the arbitrators could and would agree if they all acted. In the case of all written laws it is the intent of the lawgiver that is to be enforced. "It is a rule of construction that the whole is to be examined, with a view to arriving at the true intention of each part." "The thing we are to seek is the thought which it expresses." The spirit as well as the letter of a statute must be respected, and where the whole context of the law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid that intent. Opinion of Judge Marshall in *Durousseau v. The United States*, 6 Cranch, (Sup. Ct. U. S.,) 314. An authority of two, to fix the value of a tract of land, and if they cannot agree, to choose a third, "who, together with the other two, shall agree on the price," does not require all three to agree; it appearing that the parties intended the price should be fixed at all events; if two of the three agree and the other dissents, this is an execution of the authority. *Hobson v. McArthur*, 16 Peters (Sup. Ct. U. S.,) 188. In this case, Thompson, Judge, delivered the opinion of the court, and in that opinion he says: "It has been argued, that this being a delegation of power to three, for a mere private purpose, all

must agree, or the authority has not been pursued. This may be admitted to be the rule, when the original delegation of the power is to the three, without any other provision on the subject; but in construing this agreement, we must look at what was the obvious intention of the parties. The parties clearly intended that the valuation should, at all events, be made. A third man was not to be called in, unless the two disagreed; and it is an unreasonable construction of this agreement that it was so framed that it not only might fail to accomplish the very object intended, but that in all probability, it must fail and become entirely nugatory, as the third man was not to be called until the two had disagreed. Upon the construction of the agreement, that the three must unite in the valuation, the office to be performed by the third man was to persuade the other two to agree with him. This could never have been the understanding of the parties. It is a more reasonable construction to consider the third man in the character of an umpire to decide between the two that should disagree. This would insure the accomplishment of the object the parties had in view. But a contrary construction would most likely defeat the object. Upon this view of the agreement, the valuation by two of the appraisers was within the submission." This opinion strongly supports the view I have expressed above, as to the validity of the award in question here, and much that is contained in that opinion applies forcibly and directly to the proper interpretation of said seventeenth section, touching the award. When we consider the object and purpose of the legislature, as well as its importance, in authorizing an absolute right of purchase of plaintiff's gas works and property, as provided in said seventeenth section, it seems to me to so construe that section as to require all three of the arbitrators to sign the award fixing the price and terms of purchase, to make it valid, would be absurd and unreasonable, and would defeat the object of the section. For these reasons I consider and am of the opin-

ion that said instrument of writing, bearing date the 29th day of May, 1871, purporting to be an award, is within the provisions of the said seventeenth section of the act of the General Assembly of Virginia, incorporating the plaintiff, and that it is a valid award.

It is argued by the defendant's counsel that the plaintiff's Company is a manufacturing company and its act of incorporation within the meaning and purview of the the fifteenth section of the act of the General Assembly of Virginia, hereinbefore quoted, and that the seventeenth section of chapter sixteen of the code of Virginia of 1849 before mentioned and quoted, applies to the seventeenth section of the plaintiff's act of incorporation and operates thereon in the construction thereof. The plaintiff's charter was passed March 18, 1850, and took effect from its passage; The defendant's assent was given April 29, 1850, and the plaintiff's Company was organized May 11, 1850—the capital stock of $50,-000 having then been subscribed and taken. The code of 1849 was passed August, 1849, but did not take effect until the first day of July, 1850; which was after the plaintiff's charter took effect, and near two months only after plaintiff's Company was organized, and the fifteenth section of said act of 1837 provides that all acts for the incorporation of manufacturing companies shall, at all times, after the lapse of fifteen years from the organization of the company, be liable to be amended or repealed at the pleasure of the legislature. It is not necessary to decide this question as under the view I take of the case it does not properly arise.

But as it is evident that it is contemplated by said seventeenth section of plaintiff's act of incorporation, that plaintiff should have only the reasonable value of the property in money from the defendant, it is argued with great force and plausibility that said rule third of the sixteenth chapter of the code of 1849 may properly be applied to the award in this case, if neces-

sary, as merely effecting the remedy for the enforcement of the absolute right of purchase given the defendant, but I deem it unnecessary to decide that question now as I do not deem it material under the views I have already expressed, as to the validity of the award, upon other grounds.

The twenty-third section of chapter fifty-two of the Code of 1868 provides that "corporations now existing shall continue to exercise and enjoy their powers and privileges according to their respective charters and the laws now in force, and shall continue subject to all the liabilities to which they are now subject; except so far as such powers, privileges and liabilities are modified or controlled by this act." It is argued by the counsel of defendant that as the Code of 1868 of West Virginia, like the code of 1849 of Virginia, is but one act, that under the provisions of the section of the code of 1868 last above quoted, and the fifteenth section of the said act of 1837, the second paragraph or rule of the seventeenth section of chapter thirteen of the Code of 1868, which I have before quoted and copied herein, may properly be applied to the seventeenth section of plaintiff's charter as to the authority of the majority of the persons chosen to arbitrate; and to so apply it a majority of the arbitrators would be clearly authorized to make the award. As the the fifteenth section of the said act of 1837 seems to have been in force at the passage of plaintiff's charter, by the express provisions of said fifteenth section the plaintiff's charter, became subject thereto as to the power of the Legislature to amend as much as though it was incorporated therein as a part thereof—plaintiff's charter not containing an express provision to the contrary. The Code of 1868, by its express provisions, took effect on the first day of April, 1869, more than fifteen years after the organization of plaintiff's Company. According to the provisions of the seventeenth section of chapter thirteen of the Code of 1868, rule the second of that sec-

46

tion may be properly applied, and resorted to by the Court in the construction of section seventeen of plaintiff's charter an intent different from the provision of said second rule, on .the part of the Legislature "not being apparent from the context" in my judgement. If it was apparent from the context of the plaintiff's charter, and the seventeenth section thereof, that it was the intent of the Legislature that all three of the persons chosen to arbitrate should concur in the award then said second rule could not be properly applied by the Court in the construction of the section so as to effect or alter its apparent intent. But in my judgement it is not apparent by the plaintiff's charter, and the seventeenth section thereof, that an intent on the part of the Legislature, different from the provision of said second rule existed.

I now proceed to ascertain whether the circuit court erred in permitting said award to go in evidence to the jury. From the evidence given to the jury, as I have stated it, as appearing in bills of exception Nos. 1 and 2 and the law applicable to such a case, the circuit court properly permitted the award to go in evidence to the jury and that it did not err in this respect. The evidence given to the jury tended to prove that on the 29th day of May, 1871, the date of the award and after the award was made and signed it was delivered to both plaintiff and defendant. Plaintiff, therefore, on that day, had notice of the award and its contents and the right of defendant to pay or tender the *price* specified in the award on any day after the date thereof, within the time specified therein. The office of the plaintiff was the most appropriate and proper place for the defendants to pay or tender the price in money, specified in the award. If the directors of the plaintiff did not specially and specifically direct or authorize the plaintiff's president or secretary (who was also the treasurer of plaintiff,) to accept or receive from defendant the said price money, prior to the first day of June, 1871, when tendered, it

was not because of the fault or neglect of the defendant and the defendant can not be injured or effected in its rights thereby in the least. The tender of the amount of money specified in the award to the president and secretary of plaintiff, by the authorized agents of the defendant at the office of the plaintiff, as and under the circumstances which the evidence stated in bills of exception Nos. 1 and 2, tends to show, was a good and sufficient tender in law, and as it was refused by the president and secretary, the defendant's authorized agents at once deposited the money in a bank, close and convenient, for the use and subject to the order of plaintiff, of which plaintiff through its president and secretary then and there had notice. The evidence clearly tends to show that the defendant did all it could to comply with the terms of the award, and all justice or the law should require. It is laid down by Greenleaf that "it is a good payment, if made to a person *sitting* in the counting-room of the creditor with account books near him, and apparently interested with the conduct of the business," 2 Green. Ev. section 518. And in section six hundred and six of same book it is declared that "generally, if a tender be made to a person whom the creditor permits to occupy his place of business, in the character of his clerk or agent, it is a good tender to the creditor." In the case of *Southworth v. Smith*, decided by the supreme court of Massachusetts—It was decided that "when a party designedly absents himself from home, for the fraudulent purpose of avoiding a tender, he can not object that no tender was made." And also that "if A, the purchaser of real estate at a sale on execution, when B. a purchaser of the debtor's right to redeem, attempts to make him a tender of the money due, is absent from home by necessity or other cause, and without any intention to evade a tender, and in consequence of such absence, and by the use of due diligence, B. is unable to find A. or any person authorized to act in his behalf and is thereby prevented from making the tender seasonably,

no forfeiture of the estate is thereby incurred; and in such a case, it is not necessary that there should be a precise and accurate count of the money, provided B. was prepared to make the tender; that B. should offer the money to any one, or leave it where A. could control it." 7 Cush. (Mass.) 391. This decision was made in an action brought by B. against A. to recover land. Bills of exception Nos. 1 and 2, nor either of them, state or certify that the defendant did not give evidence to the jury tending to prove other or additional facts than those stated in the said bills of exception, nor is that fact stated or certified anywhere in the record.

The evidence also tends to show that if plaintiff did not receive the money it was not because it was not properly tendered or deposited in bank, nor for any cause save and accept that plaintiff denied the validity of the award. But the evidence further shows that nearly one year prior to the commencement of this suit, on plaintiff's motion in a chancery cause then pending on the chancery side of the circuit court of Ohio county, wherein it was and is, plaintiff, and the defendant and others, defendants, procured the court to assume to take control of the money so deposited in the bank and bring it into that cause by ordering it to be paid into the hands of Daniel C. List, the receiver of the court, upon the terms stated in the order. The evidence given to the jury by the defendant further tends to show that after defendant had tendered and deposited the money, as before stated, and after notice to the plaintiff's president and secretary of its intention to do so, on the said 1st of June, 1871, the defendant, by its authorized agents, obtained peaceable possession of the property in the declaration mentioned, from the plaintiff's superintendent and employees, without objection from them at the time, under a claim of the defendant, of its right so to do. And under said claim of right the defendant continued and remained in the possession of said property until the commencement of this suit and presumptively until the present.

This suit, for some cause, was not commenced until November, 1872, some sixteen or seventeen months after the possession was taken by defendant of the property. The seventeenth section of plaintiff's charter contains the contract between plaintiff and defendant and the State. The plaintiff consented to, and agreed to be bound by, that contract by accepting the charter containing the section, and organizing and acting under it. It received and enjoyed the powers and the benefits and exclusive privileges and franchises granted by the charter for the period of twenty years, without hindrance, interruption or obstruction, so far as the record discloses, from any quarter. The defendant, as we have seen, consented to, and agreed to be bound by, the provisions of plaintiff's charter, embracing said seventeenth section, by the solemn ordinance of its Council. The award fixing, ascertaining and determining the price and the terms of the purchase of the plaintiff's gas works, &c., was made and delivered to the parties on the 29th day of May, 1871, under and pursuant to the law and the contract. No sufficient, well-founded, legal objection to the award is disclosed or presented in the cause. Under this state of the case, and the facts which the evidence given to the jury tends to prove, in legal contemplation, the plaintiff, as to the property mentioned in said award, a part of which is the same in the declaration demanded and in controversy in this suit, stands to the defendant in the relation of vendor, and the defendant to the plaintiff in the relation of vendee. And the defendant, being in possession of the property as a vendee or purchaser of the plaintiff, its vendor, his defense set up in bar of the plaintiff's action, and which the evidence prove, or tends to prove, so far as disclosed by bills of exception Nos. 1 and 2, is covered and embraced by the twentieth section of chapter ninety of the Code of this State. It seems that in some cases, an award will pass the title to personal property. Morse on Awards 509, 510. But it seems to be settled in England and America that an award is inop-

erative for the purpose of actually passing the legal title to land; and it is frequently good as an estoppel between the parties to the submission. *Id.* 511. In England and the United States it is universally acknowledged as law that courts of chancery have power to compel the specific performance of awards, provided no adequate remedy exists at law. Thus, if the award call for a conveyance of lands. *Id.* 603 and 604. In *Jones v. Boston Mill Corporation*, Chief Justice Parker said its "true footing" is "the specific performance of a contract in writing; for the submission is the agreement. It is virtually a contract to do what shall be awarded; and there does not seem to be any reason why it is not as much the subject of equity power as if the contract were complete without the interference of an arbitrator." 4 Pick. (Mass.) 507.

By reference to 5 W. Va. 448, it will be seen that at the July term, 1872, of the then Supreme Court of Appeals of this State, this award was considered and passed upon, in some respects, by that Court. From the statement of the case and the opinion of the Court it would seem that the Gas Company filed a bill in the circuit court of Ohio county to set aside said award, among other things, because of alleged partiality and misconduct of John McLure, one of the arbitrators who signed the award. Judge Maxwell, in delivering the opinion of the Court, said, "It appears that Eoff, the arbitrator chosen by the Gas Company, is a stockholder in the Company and interested in the result of the arbitration, and that he was appointed arbitrator because he was a stockholder and because it was understood that McLure was to be appointed by the city." Again he says, "without commending the expediency of such references, the court can entertain no doubt of the validity of an award made under such circumstances, nor could the parties be heard to impeach the award in this case under the circumstances of the appointment and conduct of the arbitrators. Especially should this be so, when, so far as the record discloses, the amount of the award seems

to be fair." He further says, upon the whole case,

"therefore the award ought not to be disturbed. There
is no other ground of equity set up in the bill, unless
the court should be of opinion to set aside the award,
but as this Court fails to see any good cause to set the
award aside, the other questions cannot be considered."
But the Judge immediately afterwards says, "The ques-
tion as to the sufficiency or insufficiency of the award on
account of but two of the arbitrators signing it cannot
be determined by this court for want of jurisdiction."
It seems to be apparent that Judge Maxwell, by the
last paragraph meant and intended simply to say,
that the fact that the award was only signed by two out
of the three chosen arbitrators was not sufficient to give
a court of equity jurisdiction of a bill to set aside the
award, or declare it void for that cause. This was one
of the reasons alleged in the bill, (as I understand the
case as reported) why the award should be set aside or
declared void by a court of equity. The Judge, in all
other parts of his opinion, evidently treats the award as
not being void at law for any cause appearing on its
face. If an award is on its face *void* at law, I appre-
hend a court of equity will rarely take jurisdiction of
a bill to set aside the *void* award because of alleged mis-
conduct in some of the arbitrators. Generally, so to do
would be a work of supererogation. In such a case the
award bears its invalidity on its face wherever presented,
and a decree of a court declaring it void would not add
to its invalidity. I do not now ascertain that no case
can be presented where a court of equity will entertain
a bill to set aside an award which is on its face void. I
only mean to say that generally the exercise of jurisdic-
tion, in such a case, is unnecessary for relief or protec-
tion in any forum, for any purpose, and that courts of
equity will not take and exercise jurisdiction for vain
and useless purposes.

Entertaining the views I have declared in the prem-
ises, I am of opinion and consider that there was and is

no error in the rulings and decisions of the circuit court, in the first, second, third, fourth, fifth, seventh, eighth, ninth, tenth, eleventh and twelfth bills of exception mentioned.

The instruction asked for by the plaintiff in the sixth bill of exception mentioned to be given by the court to the jury was "that in order to perfect the equitable title set up as a defense to this action, a proper legal tender must, among other things, be proven to the satisfaction of the jury." This instruction was asked after evidence was given to the jury as set forth in bills of exception Nos. 1 and 2, as stated in said bill of exceptions No. 6. As has been stated, this instruction was refused by the court. This instruction is, I think, justly subject to criticism and objection for vagueness, and as being well calculated to mislead and deceive the jury in this case. It is asked to be given as an abstract proposition of law, and assumes that a proper legal tender must, among other things, be proven to the satisfaction of the jury in order to perfect the equitable title set up as a detense to this action. What do the words, "proper legal tender," as employed in this instruction mean, or what construction might a jury reasonably place upon them? Do they mean that the defendant should have *actually* tendered the price fixed in the award in money to the directors of the plaintiff, or to the stockholders of the plaintiff, in order to perfect the defendant's equitable title to the property, set up by the defense, or to some person, or persons, specially and expressly authorized for the purpose by the plaintiff's directors? It is manifest that a jury might give to the words employed such construction and be thereby deceived and mislead as to the law. To whom is it meant by the words employed the tender should have actually been made? The instruction does not specify. The jury is left to determine the legal question as to what persons or officers of the plaintiff a tender made to of the money were proper persons to pay or tender payment of the money to.

Again the instruction does not say tender of what, whether the price in money fixed in the award or something else. But there is another objection to this instruction which is perhaps more serious than those already suggested and that is that the instruction assumed that there must have been a proper legal tender made in order to complete the defendant's equitable title to the property. This I apprehend is not sound law according to the decision in 7 Cush. to which I have already referred. If the defendant after the award was made and notice to the plaintiff and defendant, thereof, and within the time specified in the award had, by its proper officers or agents, gone to the plaintiff's office at seasonable hours of the day ready and prepared to tender the price money to the plaintiff and for the purpose of tendering and paying the money to the plaintiff in good faith and then and there offered to pay the money to the persons or officers of the Company there found and was prevented from paying the money or tendering it to the plaintiff because the persons or officers there found were not actually authorized to receive it by plaintiff and on account thereof, the defendant was prevented from tendering or paying the money to plaintiff, or any person or officer, actually authorized by plaintiff to receive it, the equitable title of the defendant to the property, could not be prejudiced thereby, but for many purposes it would be perfected as much as though it had actually tendered the price money to the plaintiff or to its directors—In that case the defendant would have complied with the award and the terms thereof, so far as it was reasonably in its power, and its failure was not because of its neglect or default, but because of the default and neglect of the plaintiff. In a word if the defendant did all it reasonably could in good faith to tender and pay the price money to the plaintiff according to the terms of the award, and was prevented therefrom by the absence or default of the plaintiff to have or provide any person at its office authorized to re-

47

ceive the money, the defendant's equitable title to the
property could not thereby be prejudiced in any essential
particular so as to deprive it of any of its equitable rights
in or to the property, and practically it would stand for
many purposes, so far as its equitable title to the property
was concerned, just as though it had made an actual ten-
der of the money to the plaintiff. But if it be admitted
that the instruction, as asked, contains a sound abstract
proposition of law and is relevant to the evidence before
the jury, still I am clear in my mind that the plaintiff was
not in fact and could not be prejudiced by the failure of
the court to give it to the jury in the language asked by
the plaintiff because the court did in substance and effect
give the said instruction to the jury in and by the instruc-
tion it gave to the jury, as far as proper, at the instance of
the defendant which is stated in the twelfth bill of ex-
ceptions. The court, as shown by the twelfth bill of ex-
ceptions, did clearly instruct the jury that if they be-
lieved from the evidence that the defendant, by its au-
thorized agents, on the first day of June, 1871, at the
office of the plaintiff did tender to the president and secre-
tary of the plaintiff the sum of money specified in the
award of the 19th of May, 1871, as and for the ascer-
tained price and value of the premises in controversy and
the other property in said award referred to, &c., then
the action of the defendant was a sufficient compliance
with the award. This, I think is a practical instruction
and relevant to the evidence and substantially embraces
the instruction asked by the plaintiff by clear implication,
at the least. In truth there is no conflict or contest in
the evidence or otherwise in the case about the fact o
the price money having been tendered to the president and
secretary (who was also treasurer) of the plaintiff on the
first day of June, 1871, at the Company's office, before
possession of the property was taken by the defendant—
the only contest or dispute in the case respecting the ten-
der being made, was and is whether the tender made to
the president and secretary of the plaintiff at its office,

1875.
January Term.

Gas Company
v.
Wheeling.

was a good and sufficient tender under the circumstances of the case as stated in the premises. And as before stated I think the tender so made to the president and secretary of the plaintiff at the office of the plaintiff was a good and sufficient tender in law, or in other words, a proper legal tender. And further I feel bound to declare that I am unable to see, under the circumstances before stated, that the plaintiff was or could have been prejudiced in the least by the court having refused to give the said instruction mentioned in bill of exceptions No. 6 as asked—In the language of Judge Roane, in the case of *Preston v. Harvey*, 2 H. & M. 67. "The doctrine seems to be established that a party shall not complain of, or reverse a judgment for an error which is beneficial to him. It is but pursuing the same principle to say that a judgment shall not be reversed for an erroneous decision, unless some injury could *possibly* have resulted therefrom to the party appealing. The Court does not sit here to reverse judgments for erroneous opinions on mere abstract or immaterial questions, but to give redress to parties *grieved* by the decisions of an inferior court." "The court may refuse to give an instruction because it is so obscurely expressed as to leave in doubt the meaning intended;' *Levasser v. Washburn*, 11 Gratt., 572; *Harvey v. Epes*, 12 Gratt., 153. "An instruction which is susceptible of two constructions, one of which is erroneous, and which may, therefore, mislead the jury, should not be given." *Virginia Central R. R. Co. v. Sanger*, 15 Gratt. 230; *Boswell's Case*, 20 *Id.*, 860. "If an instruction asked does not correctly expound the law, the court, as a general rule, may refuse to give it, and is not bound to modify it, or give any other instruction in its place," *Rosenbaums v. Weeden*, 18 Gratt., 785. "Though an instruction is not wholly correct; yet if the general refusal of it may mislead the jury, the court should accompany the refusal with an explanation to the jury, or should give them an instruction stating the correct proposition;" 17 Gratt., 472.

See also on this subject, *Hopkins v. Richardson*, 9 Gratt., 486; *Early v. Garland*, 13 Gratt. 1 ; *Baltimore & Ohio Railroad Co. v. Polly*, 14 Gratt., 447; *Ward v. Churn*, 18 Gratt., 801. At the first glance there seems to be some clashing and inconsistency in the decisions of some of these cases, but a close examination and analysis will, I think, harmonize them. Perhaps some of them may need some modification, on a proper occasion. Questions not dissimilar in principle to that now under consideration have been considered and acted on by this Court. In the case of *Beatty v. B. & O. R. R. Co.* 6 W. Va., 389, it was decided that "An instruction given by the court, which, upon the state of the evidence given by the party excepting, could not be injurious to him, is no ground for reversing the judgment." See also *Colvin v. Menifee*, 11 Gratt., 87. Most that I have said in relation to the instruction stated in the sixth bill of exceptions, and most of the authorities cited bearing thereon, apply to the seventh, eighth and tenth bills of exception and the instructions therein stated, as well as other principles and law hereinbefore stated.

No exception appears to have been taken to the judgment of the court in overruling the plaintiff's motion to set aside the verdict and judgment in the cause; it is therefore unnecessary to consider the action of the court in this respect.

Upon full consideration of the whole case it seems to me that there is no error in the judgment of the circuit court, for which the same should be reversed for the reasons above stated. The judgment of the circuit court must, therefore, be affirmed with costs and $30 damages to the defendant in error against the plaintiff in error.

Hoffman and Moore, Judges, concurred.

Paull, Judge, did not sit in the argument and decision of this case, by reason of being a tax payer and resident of the said city of Wheeling.

JUDGMENT AFFIRMED.